UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                            Case No. 24-CR-78

JAMES E. POOLE

    Defendant.

## DEFENDANT'S SENTENCING MEMORANDUM

The Defendant, Mr. James E. Poole ("Poole") by and through counsel, Morgan L. Minter of HART POWELL, S.C., hereby respectfully submits this sentencing memorandum in anticipation of Poole's March 6, 2025, sentencing hearing:

In every human being, there is an innate desire for attachment and security. Separation from those who are viewed as caregivers or protectors may provoke an unwavering sense of anxiety and vulnerability. When left alone the imagination is free to run wild, bringing light to all the dangers that may be lurking in the shadows. These dangers may include a hairy monster with long claws crawling out from under the bed as a child, or as an adult, over-analyzing an argument with a family member, believing that the relationship is forever ruined, when rather it was a mere disagreement.

This anxiety and vulnerability may never dissipate throughout life. Numerous studies have attempted to define "normal" milestones of human growth and development by distinguishing five phases: (1) infancy (neonate to one year old), (2) toddler (one to five

HART POWELL, SC
ATTORNEYS AT LAW
735 NORTH WATER STREET
SUITE 1212
MILWAUKEE, WI 53202
(414) 271-9595

1

years old), (3) childhood (five to eleven years old), (4) adolescence (twelve to eighteen years old), and (5) adulthood.[1] However, when reviewing these phases of life, a young boy from Milwaukee would likely have completely different experiences in life than a young female from Texas.

During Poole's short nineteen years of life, he has already experienced a tremendous number of obstacles. The only constant stability, support, and comfort was provided by his mother, who was also raising numerous other children on her own, as well as working two jobs. Poole's decision to seek security and camaraderie from those around him unfortunately derailed his path in life for a number of years. Poole at the time of his sentencing will be nineteen years old, with already three of those years under the supervision of the Department of Corrections.

As the information discussed below shows, these offenses occurred one day apart and arose from a series of bad decisions Poole made when he was eighteen. Rather than debating what to wear while walking across the stage at graduation, he is left to think about how his childish actions have brought forth adult consequences. Poole now understands that he will have to answer for his past decisions now and throughout his entire future. He wishes to move forward in a more positive and productive way.

**Background**

*After birth, environmental factors may exert either a beneficial or detrimental effect on growth.* [2]

**HART POWELL, SC**
ATTORNEYS AT LAW
735 NORTH WATER STREET
SUITE 1212
MILWAUKEE, WI 53202
(414) 271-9595

---

[1] *See* Palanikumar Balasundaram & Indirapriya D. Avulakunta, *Human Growth and Development,* (last updated Mar. 8, 2023), https://www.ncbi.nlm.nih.gov/books/NBK567767/.
[2] Schell LM et al., *Environmental Influences on Human Growth and Development: Historical Review and Case Study of Contemporary Influences*, 36(5):459-77, (2009).

From birth to the age of five years old Poole did not have the support that most children experience. Poole had experienced the loss of two individuals who filled the role of a paternal figure. His father passed away from an accident when Poole was only two years old, too young to understand the meaning of death. Lydia Jones, Poole's mother, married Antonio Payne shortly after his father passed away. When Poole was around five years old, Ms. Jones and Mr. Payne divorced. While Mr. Payne was involved in Poole's life, he was a positive influence who was dedicated to his work and dependable. Poole did benefit from his positive relationship with Mr. Payne, however, before he even turned ten years old, he had experienced a loss of two important people.

His physical health, since birth, was also a stressor for Poole and his mother. At birth, Poole was diagnosed with sickle cell disease, which cannot be seen with the naked eye. Symptoms include severe pain in the bones, joints, muscles, and organs that can last between a few days to full weeks. During Poole's childhood (birth to five years old) he believes he was admitted to the hospital around 50 times to receive aid for his constant pain.

"Normal" milestones for this time in a child's life are learning how to walk, learning basic language, drawing shapes, counting to ten, and engaging in imaginative play. Whereas Poole was constantly in and out of hospitals, attempting to get proper medications to mediate the chronic pain, learning about death, and losing positive influences he admired. Poole's environmental factors exerted a detrimental effect on his growth.

HART POWELL, SC
ATTORNEYS AT LAW
735 NORTH WATER STREET
SUITE 1212
MILWAUKEE, WI 53202
(414) 271-9595

*Exposure to adverse experiences can hinder development.*[3]

During Poole's entire childhood he moved nearly every year. While trying to work two jobs and keep the power on, Ms. Jones was not always able to renew their lease, causing them to move nearly every year. Poole and his siblings had to continuously reintegrate into new neighborhoods and make new friends so they would not feel alone. For the most part, in Poole's early childhood, he did not reside in neighborhoods heavily populated with gang activity.

When asked about this time of life in the PSR interview, Poole did not have many answers. He did not know what his mom did for work, or how money was brought home every week. He did not have any information regarding his father's family and how many half siblings he may have. He stated that the neighborhoods he lived in were safe and low in crime, but when asked again he said he was merely successful in avoiding "bad people." He did not know his social security number or if he even has one.

Poole does not believe that he faced adverse experiences throughout this phase of life; however, he does not remember any experiences at all from this time of life—which may be just as damaging.

*In adolescence, teenagers begin forming their own opinions and are largely influenced by both their friends and social media.*[4]

---

[3] Nelson CA et al., *How Early Experience Shapes Human Development: The Case of Psychosocial Deprivation* (2019).

[4] CORAL CARE, *Developmental Milestones for Teens (13-18 Years),* https://www.joincoralcare.com/developmental-guides/milestones-teens-13-18-years (last visited Feb. 25, 2025).

HART POWELL, SC
ATTORNEYS AT LAW
735 NORTH WATER STREET
SUITE 1212
MILWAUKEE, WI 53202
(414) 271-9595

Poole was first arrested at the young age of sixteen. Officers found the stolen car, discovered two bullet holes in the car, and were dispatched to Children's hospital for a shooting complaint. Poole was not the juvenile shot; he was accompanying the injured juvenile in the hospital. Poole cooperated with officers, explaining they were in the car and when they go out an unknown party shot towards them. He reported someone else had stolen the vehicle, and that is who he believed was shooting.

The second time Poole was arrested he was seventeen. After a traffic violation, it was discovered that he was driving a stolen vehicle, and a high-speed chase ensued. He was sentenced to two years probation. In September 2022, Poole was arrested for a third time. He was a passenger in a stolen car, admitted responsibility, and received his sentence only two months after he was originally arrested.

In January 2023, Officers were called to Poole's residence due to a shots fired investigation. Rather than conducting a full investigation into the multiple shots fired into the home of Ms. Jones and Poole, officers entered the residence and arrested Poole for having a firearm. He was ultimately released without additional charges for this conduct. Poole was arrested for a fifth time in early 2023 due to being in another stolen vehicle (this matter is still pending). He was not revoked for this conduct and was released in August 2023. From August to December of 2023, Poole had no reported violations and was attempting to rebuild his life until the conduct of the current offenses.

When Poole was about fifteen years old he began again to experience loss and loneliness on an unprecedented level. He lost a friend due to suicide and violence, he was struggling with what crowd to fit in with, and was inherently struggling with undiagnosed

**HART POWELL, SC**
ATTORNEYS AT LAW
735 NORTH WATER STREET
SUITE 1212
MILWAUKEE, WI 53202
(414) 271-9595

mental health issues. He began hanging out with the "older kids" in the neighborhood where he could find protection, he was exposed to drugs, and began his rapid downward spiral.[5]

During his time incarcerated, Poole did not feel that he needed mental health treatment or substance abuse treatment. When he was eventually screened, he was officially diagnosed with depression, anxiety, and unspecified trauma disorder. He reported he was experiencing auditory hallucinations in high stress situations and admitted to having suicidal thoughts. Along with his mental health, his physical health additionally declined. Prior to incarceration, the longest time Poole had spent in the hospital for sickle cell treatment was five days. Recently, in December of 2024, Poole began having trouble breathing and an uncontrollable burning in his chest. He was hospitalized for almost two weeks before he could be discharged with proper pain management medication.

Redemption is always the goal. Here, Poole has taken many proactive steps to show he has begun to turn his life and priorities around. He is prepared to accept the sentence this Court fashions and is prepared to better his life upon release. He plans on obtaining a GED while in custody and has been on the waitlist for school at Criminal Justice Facility where he is currently being held. He wants to continue his education and become a car mechanic, utilizing the skills his step-father used to make an honest living.

**HART POWELL, SC**
ATTORNEYS AT LAW
735 NORTH WATER STREET
SUITE 1212
MILWAUKEE, WI 53202
(414) 271-9595

---

[5] *See* Marianne Bertrand & Jessica Pan, *The Trouble with Boys: Social Influences and the Gender Gap in Disruptive Behavior*, Nat'l Bureau of Econ. Research (Oct. 2011) https://www.nber.org/system/files/working_papers/w17541/w17541.pdf.
("boys likelihood to act out is sharply reduced when faced with larger and better parental inputs").

**Argument**

Pursuant to the plea agreement, Poole is free to argue for an appropriate sentence no lower than the mandatory minimum of seven years in prison. ECF 33, ¶ 24. The plea agreement and PSR note that the Government believes the combined adjusted offense level of counts one and three is 29. Id. at ¶ 20. The Government will also recommend a three-level decrease under sections 3E1.1(a)-(b) as authorized by the Sentencing Guidelines manual and recommend a sentence at the low end of the guidelines. Id. at ¶¶ 21 & 24.

The PSR lists his total offense level as 27, criminal history category III, and his guideline range as 87-108 months, which totals 171-192 with the addition of the 84-month mandatory minimum within 18 U.S.C. § 924(c). There were no objections to these calculations, however, Poole is more than the conduct listed in the PSR. Poole submitted an acceptance of responsibility explaining the impact of his behavior on others, admitted he was the one who put himself in this situation, and noted his plans to further his education upon release so he does not end up back in the same situation.

Poole is requesting the Court impose a non-guideline sentence of 108 months imprisonment. This recommendation is supported by the following:

1. The section 3553(a) factors support a non-guideline sentence of 108 months of imprisonment.

Such a sentence is entirely consistent with and is sufficient but not greater than necessary in achieving the sentencing goals and purposes set forth in 18 U.S.C. § 3553(a). In

**Hart Powell, SC**
Attorneys at Law
735 North Water Street
Suite 1212
Milwaukee, WI 53202
(414) 271-9595

imposing a sentence, the district court must first calculate the advisory sentencing guideline range, then determine the appropriate sentence under 18 U.S.C. § 3553(a).[6]

Poole offers the following information for the Court's consideration regarding his sentencing on March 6, 2025. He was detained on January 30, 2024, and as of the day of sentencing he will have been in custody for 402 days; 351 of those days in state custody due to serving a revocation, with the remaining 51 days held in state custody with a federal detainer.

Up until this point, Poole has been a statistic of recidivism. According to a study completed about recidivism rates of prisoners between 2005 and 2014 and updated in 2018, forty-four percent of released prisoners were arrested during the first year following release.[7] With Poole's prior criminal history this statistic rings true. Each charge is less than a year apart from the one before.

However, now is the time that he will break that cycle. The United States Sentencing Commission's study on recidivism after the enactment of the Sentencing Reform Act of 1984, produced the following results. When an offender was sentenced to 60 months or less of incarceration, there was not any statistical significance of recidivism.[8] According to Poole's criminal history, he has only served sentences below 60 months (longest being 18 months), and he has continued to re-offend. However, the results of the study further pointed out that after 60 months of incarceration the

---

[6] *See Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586, 596, 169 L.Ed 2d 445 (2007); United States v. Holt, 486 F.3d 589, 593 (7th Cir.2007), cert. denied, 128 S.Ct. 963, 169 L.Ed.2d 770 (2008).
[7] *See* Mariel Alper, Ph.D et al., *2018 Update on Prisoner Recidivism: A 9-Year Follow-up Period (2005-2014)*, U.S. Dept. of Just. (May 2018) https://bjs.ojp.gov/content/pub/pdf/18upr9yfup0514.pdf.
[8] U.S. SENT'G COMM'N, Length of Incarceration and Recidivism (June 2022) https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220621_Recidivsm-SentLength.pdf.

HART POWELL, SC
ATTORNEYS AT LAW
735 NORTH WATER STREET
SUITE 1212
MILWAUKEE, WI 53202
(414) 271-9595

recidivism rate decreased by eighteen percent in relation to the cohort group. Id. Furthermore, the study also demonstrated that the biggest drop in the percentage of recidivism occurred when a federal offender was sentenced to 120 months or more—dropping the likelihood of recidivism down twenty-nine percent. Id.

Additionally, the United States Sentencing Commission discovered a pattern within the federal courts regarding sentencing offenders who plead guilty to both 18 U.S.C. § 924(c), an offense with a mandatory minimum, and an offense that does not hold a mandatory minimum. The study demonstrated that between 2018 to 2022 the average sentence handed down by the federal courts in relation to these two types of offenses was *lower* than the average guideline minimum calculation prior to sentencing.[9]

The requested sentence below the advisory guideline range constitutes just punishment under the circumstances of this case and will be more than sufficient to deter Poole from participating in future criminal conduct. Further time beyond 108 months incarcerated would be greater than necessary. After a total incarceration of 120 months (counting the time Poole has already been in custody), Poole would be deterred from further criminal conduct because of the considerable amount of time he now has to reflect and think about the consequences of his actions. There will be general deterrence because others in the community will get the message that, if you commit these actions, you will face a mandatory minimum in custody away from loved ones. Protection of the community does not always mean incarceration. According to 18 U.S.C. § 3582(a) "imprisonment is not an appropriate means of promoting correction and rehabilitation,"

**HART POWELL, SC**
ATTORNEYS AT LAW
735 NORTH WATER STREET
SUITE 1212
MILWAUKEE, WI 53202
(414) 271-9595

---

[9] U.S. SENT'G COMM'N, Quick Facts 18 U.S.C. § 924(c) Firearms Offenses (2022) (emphasis added) https://www.ussc.gov/research/quick-facts/section-924c-firearms#:~:text=The%20average%20sentence%20for%20all,determined%20to%20be%20career%20offenders.

9

programming is more effective in the community with the additional aspects of resocialization into the community and employment opportunities.

Poole does have a need for mental evaluations and treatment and could benefit from substance abuse treatment. The Residential Drug Abuse Program is the BOP's most intensive substance abuse program running nine months, consisting of 500 hours of specialized treatment. Research suggests that RDAP participants are significantly less likely to recidivate and less likely to relapse to drug use than non-participants.[10] This program could help Poole by teaching him how to improve his physical heath, mental health, intrapersonal communication, and his interpersonal relationships; unfortunately, he is ineligible due to his offense of conviction. A below guideline sentence is necessary for proper rehabilitation here. Upon Poole transitioning to supervised release he will be faced with stringent conditions set and overseen by the Court. This supervision will allow Poole to receive excellent programming, with assistance of the trained professionals within the probation office, such as AODA assessments, specific follow up treatment, drug testing, and any other specialized program deemed appropriate to ensure rehabilitation.

**Conclusion**

Poole has only been alive for nineteen years and already experienced many things most will never have to endure, which is an all too familiar story in this courtroom. After already being incarcerated for over a year, he is ready to take responsibility for his actions, acknowledge his role in these offenses, and continue to express remorse for the harm he has caused the victims and his family. His resulting guideline range is an over

---

[10] *Custody & Care: Substance Abuse Treatment*, Fed. Bureau of Prisons (last visited Feb. 25, 2025) https://www.bop.gov/inmates/custody_and_care/substance_abuse_treatment.jsp.

**HART POWELL, SC**
ATTORNEYS AT LAW
735 NORTH WATER STREET
SUITE 1212
MILWAUKEE, WI 53202
(414) 271-9595

characterization of necessary punishment, and the aims of sentencing can be accomplished with a below guidelines sentence as shown in the Sentencing Commission's studies. Based on the information above, Poole requests this Court impose a sentence of 108 months imprisonment. When adding the total amount of time Poole will be incarcerated since January 30, 2024, he will fall into the statistic set forth by the Sentencing Commission of least likely to recidivate after 120 total months incarcerated. This sentence is sufficient but not greater than necessary to serve the purpose of 18 U.S.C. §3553(a)(2).

Further information and arguments will be provided at the sentencing hearing.

    Dated at Milwaukee, Wisconsin, this 26th day of February, 2025.

Respectfully submitted;

By:   /s/ Morgan L. Minter
      Morgan L. Minter
      SB# 1118679
      Morgan@hartpowell.com

**HART POWELL, SC**
ATTORNEYS AT LAW
735 NORTH WATER STREET
SUITE 1212
MILWAUKEE, WI 53202
(414) 271-9595